UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ALEXANDRO SUERO,

                              Defendant.

---

11-CR-84 (PAE)

<u>ORDER</u>

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Alexandro Suero seeking his release from Federal Correctional Institution ("FCI") Allenwood Low pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents for inmates.  *See* Dkt. 46 ("Def. Ltr.").  The Government opposes this request.  Dkt. 51 ("Gov't Mem.").  For the reasons that follow, the Court denies this application.

Suero was a member of a home-invasion robbery crew that targeted illegal gambling operations and suspected narcotics dealers.  Gov't Mem. at 2.  Suero—whose role in these robberies was to provide intelligence about potential targets based on knowledge he gained as an illegal gambler and large-scale narcotics dealer—was involved in several home-invasion robberies throughout 2007.  Dkt. 43 ("Sent. Tr.") at 33–34.

Most significant of the crimes Suero committed in connection with this crew, in April 1998 Suero personally committed the brutal murder-for-hire of Henry Castano.  *Id.* at 31.  Suero conspired with other members of the crew to rob Castano, a drug courier, of $1.3 million that he was carrying, and agreed in advance to end Castano's life if doing so would help the crew avoid suspicion for the robbery.  *Id.* at 31–32; Gov't Mem. at 3.  After learning that Castano had

already handed off the money to one of their co-conspirators, and therefore that Castano "had to be killed" to avoid throwing suspicion on their operation, Suero and another co-conspirator kidnapped Castano, placed him in the backseat of their car, duct taped his mouth, and sat on him until, some 10 or 15 minutes later, he expired.  Sent. Tr. at 32; Gov't Mem. at 3.

On December 19, 2011, Suero entered a guilty plea on one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, which Judge Hellerstein accepted in January 2012.  On September 24, 2013, Suero pled guilty before this Court to murder in connection with narcotics trafficking, in violation of 21 U.S.C. § 848(e)(1)(A), in connection with the Castano murder.  Suero's Hobbs Act robbery case was later reassigned to this Court. On June 7, 2016, the Court sentenced Suero in both cases.  On the murder charge, the Court sentenced Suero to 360 months' imprisonment.  *See* Sent. Tr. at 42.  The Court noted the "premediated," "gruesome[,] and cold blooded" nature of Suero's crime, and his substantial criminal history, *id.* at 31–32, 36, while crediting Suero for his acceptance of responsibility, and his personal history since committing the crime.  The sentence imposed was at the bottom of the advisory Guidelines range, *id.* at 39–42.  In the Hobbs Act robbery case, the Court sentenced Suero to a concurrent 240 months' imprisonment, followed by a three-year term of supervised release.  *See* Sent. Tr. at 42.  To date, Suero has served a little under 10 years of that sentence.  His estimated release date is May 4, 2036.  Gov't Mem. at 5.

Suero filed a request for compassionate release with the warden of FCI Allenwood Low based on concerns that he is at a heightened risk for severe COVID-19.  *See* Def. Ltr. at 2.  The Bureau of Prisons ("BOP") denied his request.  *See id.*  On July 14, 2020, the Court received a

*pro se* motion from Suero seeking early release in light of the COVID-19 pandemic.  Def. Ltr. On July 31, 2020, the Government filed its opposition to Suero's request.  Gov't Mem.[1]

Suero asks the Court to convert his remaining period of incarceration to a term of home confinement, *see* Def. Ltr. at 2, on account of his heightened risk of severe COVID-19 resulting from his hypertension and cardiomyopathy, *see id.*; Gov't Mem. at 5 (noting Suero's specific medical conditions).  The Government opposes Suero's early release, arguing that Suero's motion should be denied because a reduction in his sentence is not supported by the factors set out in 18 U.S.C. § 3553(a).  *See* Gov't Mem. at 1, 8–9.[2]

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (citing 28 U.S.C. § 994(t)).  Relevant here,

---

[1] On July 14, 2020, the Court directed Suero's prior defense counsel to submit a memorandum of law in support of Suero's *pro se* motion for compassionate release.  Dkt. 46.  On July 28, 2020, defense counsel responded that he had not previously been aware of the proceedings and was no longer on the CJA Panel, but nevertheless offered to represent Suero *pro bono* for purposes of his compassionate release motion.  Dkt. 49.  Upon further review, the Court decided that it could resolve Suero's application on the basis of Suero's *pro se* submission and the Government's response, and so did not appoint counsel to supplement Suero's original letter.  Dkt. 50.

[2] The Government does not contend that Suero has failed to exhaust his administrative remedies.

the Commission's policy statement and its corresponding commentary on § 3582(c)(1)(A) state

that a court may reduce a sentence for "extraordinary and compelling reasons," including where

the defendant is "suffering from a serious physical or medical condition . . . that substantially

diminishes the ability of the defendant to provide self-care within the environment of a correctional

facility and from which he or she is not expected to recover."[3]  U.S.S.G. § 1B1.13(1)(A) &

cmt. n.1(A).  The defendant must also not be a danger to the community and the reduction must

be consistent with the Commission's policy statement.  *Id.* § 1B1.13(2)–(3).

 The first of these factors favors, to a degree, Suero's early release.  The COVID-19

pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear

and present danger to free society for reasons that need no elaboration.  The crowded nature of

federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains

entry, will spread.[4]  And, realistically, a high-risk inmate who contracts the virus while in prison

will face challenges in caring for himself.  For these reasons, in the past months, numerous

courts, including this one, have ordered the temporary release of inmates held in pretrial or

---

[3] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts.  *See Ebbers*, 432 F. Supp. 3d at 422–23, 427.

[4] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020, updated May 20, 2020), https://www.nytimes.com /2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, --- F. Supp. 3d ---, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov /coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

presentencing custody[5] and, in more limited instances, the compassionate release of high-risk

inmates serving federal sentences.[6]

The Centers for Disease Control ("CDC") warns that persons with hypertension and

cardiomyopathy have an elevated risk of serious illness if they contract the disease.[7]  Suero

undisputedly has both of these conditions.  *See* Gov't. Mem. at 5.  The Government therefore

does not disagree that Suero's conditions, in the context of the COVID-19 pandemic, give rise to

extraordinary and compelling circumstances under § 3582.  *See* Gov't Mem. at 8.

---

[5] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC),
2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to
18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United
States v. McKenzie*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3
(S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c),
to defendant who had pleaded guilty to single count of assault with a deadly weapon and had
previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3
(S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to
defendant who had pleaded to a narcotics offense); *cf. United States v. Stephens*,
--- F. Supp. 3d ---, No. 15 Cr. 95, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020)
(granting defendant's request for reconsideration of bail conditions and releasing him to home
confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary
release).

[6] *See, e.g.*, *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020)
(ordering compassionate release of elderly defendant, who had serious medical conditions and
played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390
(PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390
(PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant
with an immune-inflammatory disease who had served all but 34 days of a four-month sentence);
*United States v. Hernandez*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3
(S.D.N.Y. Apr. 2, 2020) (ordering compassionate release of defendant with asthma who had
served 17 months of a 24-month sentence, was scheduled for release in four months, and was not a
danger to the public).

[7] *See People of Any Age with Underlying Medical Conditions*, Ctrs. for Disease Control &
Prevention (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/groups-at-higher-risk.html.

Instead, the Government argues that a reduction in his sentence is nevertheless inappropriate on other grounds. *See id.* at 1. The Court agrees that Suero's release is unjustified for two independent reasons.

First, the second factor identified by the Sentencing Commission's policy statement, danger to the community, decisively disfavors Suero's early release. U.S.S.G. § 1B1.13(2). As the Court reviewed in detail at Suero's sentencing, Suero participated in five home invasions as well as a brutal murder. *See* Sent. Tr. at 31–33. The Court there stated that Suero's crimes "could not have been more serious," *id.* at 31, and that "few offenses are more evil" than the "gruesome and cold blooded" execution of Henry Castano for pecuniary gain, *id.* at 32. As to the home invasions Suero facilitated, the Court explained that such crimes "can easily spin out of control and lead to violence or even death," and that some of the perpetrators of the home invasions in which Suero participated "brandished firearms, forced victims to surrender their money, and used plastic zip ties to tie up victims." *Id.* at 34.

Nor were these episodes Suero's first threats to public safety. Before the instant offenses, Suero had five convictions, dating back to 1997, when he was age 17, and extending to 2000, when he was age 31. *See id.* at 37. Four were for criminal possession of a weapon and the fifth was for criminal trespass; together they resulted in years of incarceration. *See id.* None of these brushes with the criminal justice system deterred Suero. Instead, as the Court observed: "Each time, notwithstanding [his] prior sentence, [Suero] continued to commit crimes." *Id.* Given this track record "and the sheer number of violent acts [Suero] had committed," the Court did not "have great confidence that if [Suero] were at liberty any time soon, [he] would this time obey the law." *Id.* at 38. Rather, the Court found that "there is a huge public interest in [Suero's] being behind bars." *Id.* Therefore, the Court found it necessary to impose a sentence long

enough to keep Suero in jail until "[he is] at an age when . . . [he is] less likely to engage in the marauding violence that for too long has been [his] calling card." *Id.*

Today, only four years after Suero's sentencing, the same logic applies. The Court is unpersuaded that Suero, if released, would not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). As in other cases in which the Court has denied § 3582(c) applications on this ground, this alone justifies the denial of Suero's request. *See, e.g.*, *United States v. Jordan*, No. 18 Cr. 834 (PAE), 2020 WL 3839629, at *4 (S.D.N.Y. July 8, 2020); *United States v. Simmons*, 15 Cr. 445 (PAE), 2020 WL 1847863, at *2 (S.D.N.Y. Apr. 13, 2020) (collecting other cases).

Independently, the third factor identified by the Sentencing Commission—an analysis of how the § 3553(a) factors currently apply—also strongly disfavors Suero's release. To be sure, given the possibility that Suero might contract COVID-19 in prison, and assuming *arguendo* that he would seek out and receive superior medical care outside of federal prison than he would in it, one § 3553(a) factor favors release today that did not at the time of sentencing: "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). But all other § 3553(a) factors continue forcefully to favor the long sentence that the Court found necessary four years ago. These include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a). The Court incorporates by reference here its assessment of those factors at sentencing. In addition to the need for specific deterrence and the protection of the public, discussed above, the Court found that a significant sentence along the lines of that imposed would further general deterrence. As the Court explained:

> It goes without saying that it's imperative that the word go out to anyone considering following [Suero's] lead that either committing murders generally or committing murders for hire specifically, including to further a drug distribution operation, no less, or committing other acts of violence, such as home invasions or robberies, will be dealt with harshly. Potential doers of such extreme wrongs need to be held in check as much as possible by the prospect of a life-altering sentence.

*Id.* at 35. The Court recognized then that "the incremental deterrent effect of each additional year or years [of incarceration] after a certain point becomes much more modest." *Id.* at 36. However, Suero's conduct was serious and dangerous—the murder alone, "and the sheer evil that it reflects, . . . require a very long sentence." *Id.* at 35.

Considering the § 3553(a) factors in totality, the Court concluded that a 360-month sentence was necessary to give effect to these factors. *See id.* at 42. That assessment remains apt. Suero has served well under half of the sentence the Court earlier found the § 3553(a) factors to require.[8] The COVID-19 pandemic, and the heightened risk that it may pose to Suero in light of his medical conditions, does not change the Court's determination that the sentence imposed is the just and reasonable one.

---

[8] Suero's case also stands in sharp contrast to those in which the Court has ordered the release of heightened-risk inmates. In a number of cases, where an inmate seeking release had served most of his or her term of incarceration, the Court has found that a fresh assessment of the § 3553(a) factors justified early release. Suero, in contrast, is not yet at the midway point of his sentence. *See, e.g.*, *United States v. Nissen*, No. 17 Cr. 477 (PAE), 2020 WL 2614825, at *3 (S.D.N.Y. May 22, 2020) (denying compassionate release motion and finding that a reduction of a 27-month sentence to seven months would be "highly inconsistent" with the 3553(a) factors); *United States v. Butler*, No. 18 Cr. 834 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for lower-ranking Nine Trey defendant diagnosed with asthma and a cardiac condition where defendant had served only 15 months of a 60-month sentence); *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (for similar reasons, denying compassionate release motion for a defendant at heightened risk of COVID-19 who had served just two months of a 33-month sentence).

Accordingly, finding that Suero continues to pose a danger to the community and that the § 3553(a) factors, considered in combination, do not support a reduction of his sentence, the Court denies Suero's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: August 6, 2020
       New York, New York